**FILED**

**2008 Feb 19 PM 02:49**

CLERK U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
CANTON

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| MICHELE L. DIGIACOMO, | ) | CASE NO. 07-61164 |
| | ) | |
| Debtor. | ) | JUDGE RUSS KENDIG |
| | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT INTENDED FOR** |
| | ) | **PUBLICATION)** |

This matter came before the Court on the Order Requiring Attorney Edward S. Asper to Appear and Show Cause, entered December 5, 2007 upon the November 6, 2007 motion for the same by the U.S. Trustee ("UST"). The Court held a hearing on this matter on December 17, 2007. Attorney Asper appeared on his own behalf. Trial Attorney Scott Belhorn appeared for the UST. At the hearing, UST recommended that the prior contempt sanctions order against Mr. Asper be modified from a monetary sanction to a non-monetary sanction, namely, the revocation of Mr. Asper's ECF privileges.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The Instant Case (DiGiacomo)

#### A. Background

The instant case was filed on April 24, 2007. Debtor's certificate of credit counseling, however, was dated October 1, 2006, more than 180 days prior to filing. On this ground, the UST filed a motion to dismiss on June 21, 2007. At the same time, the UST filed a motion to review Mr. Asper's attorney fees. The disclosure of compensation filed with Debtor's schedules showed fees paid to Mr. Asper in the amount of $750.00, with zero balance remaining. Mr. Asper filed no objections to either motion, and on July 30, 2007, the Court filed both an order granting the motion to dismiss and another order requiring Mr. Asper to disgorge the fees paid. The fees were to be disgorged to the clerk of court by August 9, 2007. They were not, and still have not been. Mr. Asper claimed at the hearing, discussed infra, that he had not been paid and that the disclosure filed with Debtor's petition was erroneous. In either event, Mr. Asper did not respond and bring this to the Court's attention, and on August 27, 2007, the Court issued a show cause order *sua sponte*, setting a hearing for September 10, 2007. Mr. Asper failed to appear, and on September 24, 2007, the Court entered an order finding Mr. Asper in contempt of court and fining him $50.00 per

day starting on September 27, 2007, until he proved that he had complied with the order to disgorge his fees.

As of October 16, 2007, Mr. Asper still had not disgorged his fees, and UST sent Mr. Asper a letter asking for an explanation on that date. (UST Ex. 1.) UST received no response.

Not only did Mr. Asper fail to respond to the Court's order and to the inquiries of UST, he filed a new case on behalf of Debtor on October 23, 2007. Case No. 07-62330. This case also had a disclosure of attorney compensation showing a fee of $300 paid, with zero balance remaining.

**B. Hearing**

The Court held its second show cause hearing, the one from which this memorandum proceeds, on December 17, 2007. Mr. Asper still had not provided proof of disgorgement of his fees from the first case. The contempt sanctions from the Court's September 24 order had by this time reached $5,050.00.

At the hearing, Mr. Asper told the Court that this case "spiraled out of control," and that he had actually filed this case for Debtor because she was a friend, and had not received any payment, contrary to what the schedules said, and that he had even paid the filing fee for Debtor in both cases.

UST then informed the Court, with Mr. Asper's consent, that it was the UST's understanding that Mr. Asper was interested in pursuing a career outside of the law. UST thus recommended that the sanctions be changed to revoke Mr. Asper's ECF privileges. Mr. Asper then indicated that he had no disagreement with the recommendation, that it was true he was leaving practice, and that he didn't like it anymore. When the Court asked if he anticipated filing any more cases, Mr. Asper responded that he just needed "about thirty days to wrap up everything," that he was looking to wrap things up, and that if he had to file anything, they would be in cases that were already open. The Court then took this case under advisement, noting that it was inclined to follow UST's recommendation.

**II. Prior Cases**

The instant case is far from the only one in which the Court has encountered trouble with Mr. Asper. An unabridged recital of Mr. Asper's transgressions would strain the storage capacity of the Court's servers, but the Court feels compelled to note specifically some more recent examples. The following is not a complete list of Mr. Asper's troubled cases. All of the following are from cases that are still open.

In In re Bigler, Case No. 07-60002, the UST filed a motion to dismiss for abuse on March 8, 2007. The Court held a hearing on the issue on October 23, 2007. At the hearing, evidence was presented that convinced the UST to offer to withdraw the motion to dismiss upon the simple filing of amended Schedules I and J and documentation to corroborate the new figures. No such schedules or documents were filed. On December 4, 2007, the UST filed a status report in the case, summarizing much of what the Court already knew and also explaining some of what was transpiring outside of the courtroom. Mr. Asper "raised

unexpected defenses to the Motion to Dismiss" at the hearing (Status Report 2), defenses which could have obviated the need for the hearing in its entirety had documentation been provided to the UST at some point between March 8 and October 23, 2007. Mr. Asper was essentially incommunicado for a great deal of this time, a problem reminiscent of that displayed in Ms. DiGiacomo's case (given that it was not until the hearing that Mr. Asper gave any indication that the compensation disclosure was false and that he had not in fact been paid). The UST attempted to contact him to no avail; a copy of that correspondence was filed with the status report. (Status Report Ex. A.) At the hearing, the debtors testified that they themselves, Mr. Asper's own clients, had been unable to contact him. Mr. Asper's mysterious nonpresence here is particularly worrisome because these documents, if extant, should be ones that should have required no discovery request; considering that any documentation corroborating the debtors' testimony on the stand would have been sufficient to make the UST back down, Mr. Asper should have been aggressively bringing such information forth long before it ever came to a hearing or discovery request. The fact that he agreed on the record to provide those documents to the UST–documents that he should already have provided anyway–and has not done so is just icing. Getting an attorney to produce documents sufficient to convince an opponent to drop his complaint should not be such an exercise in pulling teeth. Nor is there any legitimate reason for such protracted periods of complete silence from Mr. Asper in response to requests for communication from both UST and his own clients. This is particularly true with respect to his clients; this is not an ethics proceedings, but the Ohio Rules of Professional Conduct do demand that attorneys "keep the client reasonably informed about the status of the matter," Ohio Rules of Professional Conduct 1.4(a)(3) and "comply as soon as practicable with reasonable requests for information from the client." Id. 1.4(a)(4).

In In re Pleasant, Case No. 05-69219, Mr. Asper was subject to an order for turnover on October 8, 2006, more than fifteen months ago now, due to an NSF check in the amount of $4,709.81, dated January 16, 2006. Mr. Asper never produced the money. Trustee Anne Piero Silagy brought a motion for contempt on January 11, 2008. The matter came up for hearing on February 4, 2008. At the hearing, Mr. Asper appeared and claimed that he now had the money in a bank account at FirstMerit and appeared with a money order in the appropriate amount from FirstMerit–made out to the U.S. Trustee, a government agency, not Anne Piero Silagy, the Chapter 7 trustee. The Court gave Mr. Asper two weeks to get the money paid to the right person and has requested a status report from the parties on or soon after February 19, 2008. However, while this matter remains open and may finally come to a satisfying conclusion, the Court is nevertheless irked that it took fifteen months and a contempt hearing to get Mr. Asper to even offer (in bungled fashion) to produce funds that he might well have produced either before the contempt motion or in response to it, before the hearing.

In In re Baechel, Case No. 07-63216, UST filed a motion to dismiss for abuse on January 15, 2008. Mr. Asper filed a short response on January 18, 2008. The Court scheduled a pretrial conference for February 7, 2008. The UST appeared. The debtor, Mr. Asper's client, appeared. Mr. Asper himself did not. In a familiar pattern, both the debtor in that case and counsel for the UST told the court that they had attempted to contact Mr. Asper and get information from him, and had been repeatedly unsuccessful. The Court has rescheduled the hearing for March 11, 2008 and has given Mr. Baechel until that time to either retain new counsel or convince Mr. Asper to appear.

In In re Cottrill, Case No. 07-63854, a show cause order, entered January 31, 2008, is currently pending against Mr. Asper on the ground that he did not file the Declaration of Electronic Filing. Mr. Asper has until February 15, 2008 to respond or that case will be subject to dismissal.

### III. Subsequent Cases

The Court has little to say about these, other than to note their existence.

In the time since Mr. Asper told the Court at the December 17 hearing that he would not be filing any more cases, he has in fact filed three new cases, the first on December 21, 2007, only four days after the hearing, the second on January 10, 2008, and the most recent on January 30, 2008. The first of these cases is Cottrill, discussed supra Part II, because Mr. Asper is already facing a show cause order in that case. Furthermore, the most recent filing not only speaks against Mr. Asper's professed intent not to file any more cases; it is even beyond the 30-day window Mr. Asper said that he would need to wind down his entire practice.

### IV. Conclusion

The Court has already allowed several weeks more than the initial thirty days contemplated at the hearing on December 17, 2007, for Mr. Asper to wind down his practice. He told the Court at that hearing that he did not anticipate filing any more cases; he filed another case on December 21, 2007, four days later. Mr. Asper's conduct has been characterized by an appalling and pervasive lack of professionalism, and the record in this and numerous other cases is sufficient to establish that this pattern of behavior extends to his interactions (or lack thereof) with other members of the profession, and even his own clients, outside the courtroom. The Court accepts the agreement reached between Mr. Asper and the UST on December 17, 2007.

By an order to be entered concurrently with this opinion, the Court's prior contempt order will be modified to relieve Mr. Asper of the monetary sanctions against him, and his CM/ECF privileges will be revoked.

/s/ Russ Kendig

RUSS KENDIG
U.S. BANKRUPTCY JUDGE

**Service List**:

Michele L DiGiacomo
7259 Walcott St. NW
Canton, OH 44720

Anne Piero Silagy, Esq
220 Market Ave S #300
Canton, OH 44702

Edward S Asper
4733 Tuscarawas St W
Canton, OH 44708

United States Trustee, Region 9
Attn: Scott R. Belhorn
HM Metzenbaum US Courthouse
201 Superior Ave
4th Floor, Suite 441
Cleveland, OH 44114